IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ALEX ALVARADO,

     **Plaintiff,**

           **v.**                  **CIVIL NO.** 09-1346 (FAB)

JOHN E. POTTER, POSTMASTER GENERAL,

     **Defendant.**

**OPINION AND ORDER**

BESOSA, District Judge.

     Pending before the Court is defendant John E. Potter's motion for summary judgment (Docket Nos. 23 and 25), which plaintiff Alex Alvarado ("Alvarado") opposed (Docket No. 29). Defendant filed a reply to plaintiff's opposition (Docket No. 41).

**I.   Statement of Uncontested Facts**

     Plaintiff Alvarado began working with the United States Postal Service in 1991. (Docket No. 24-2 at 5-12.) In 2000, he began to work full time as a letter carrier, 40 hours a week, 8 hours a day, and on his own route. (Docket No. 24-2 at 13-19.) In 2002, his work week was increased to 48 hours a week, and during the Christmas holiday seasons from 2000 to 2008, plaintiff worked more than 48 hours a week for two months each year. Id. At all times

during the years 2000 to 2008, plaintiff was able to handle the job of rural letter carrier.  Id.

Plaintiff worked with the Postal Service until February 16, 2008; after exhausting his annual and sick leave, he resigned on April 29, 2008. (Docket No. 24-2 at 5-12.)  Plaintiff applied for U.S. Department of Labor Workmen's Compensation benefits, which were approved in May 2010 retroactively from February 16, 2008 to September 25, 2010, netting him a lump sum of $79,507.  Id. Alvarado also applied for and received Social Security benefits effective August 2008.  Id.   In total, he will be receiving approximately $3,600 per month, tax free.  Id.

Plaintiff has had a medical history of recurrent schizo-affective disorder since August 1992. (Docket No. 1.)  He received psychiatric treatment and medication, which were effective in controlling the symptoms of his mental illness and allowed him to perform his duties as a rural mail carrier throughout his employment.  Id.   Alvarado has been taking Zymbax and other medication since he was 15 years old, the dosage of which has increased throughout the years.  (Docket No. 24-2 at 23-27.)  He claimed that the times he was late in delivering mail was because of his medication.  Id. at 27.

From 2007 to 2008, Alvarado was employed as a rural mail carrier at the Bayamon Branch Station in Bayamon, Puerto Rico. (Docket Nos. 24-1; 24-2 at 12.)   On January 23, 2007, Alvarado requested an appointment with a dispute resolution specialist with the Equal Employment Opportunity ("EEO") office because of comments that the president of the union of the mail carriers, Carmelo Moyeno ("Moyeno"), made to him in November and December of 2006. (Docket No. 30-2.)   Plaintiff's claim, however, is for retaliation and disability discrimination for events beginning April 19, 2007. (Docket No. 24-2 at 20.)   On April 19, 2007, while Alvarado was working at the post office and singing the song "En Mi Viejo San Juan", Moyeno said to Alvarado in front of his co-workers:  "Give him the pill"; "He has not taken his pill"; "He needs his green, yellow, red pill"; "Which pill hasn't he taken?". (Docket No. 24-2 at 20-21.)  Also in 2007, plaintiff brought in some corn sticks for his coworkers, and his supervisor, Ruben Maldonado ("Maldonado"), mocked plaintiff by saying, "I am going to put you to work with your family."  (Docket No. 24-2 at 32-33.) Plaintiff understood this comment to mean that Maldonado was going to dismiss plaintiff, but such dismissal never occurred.  Id.

Plaintiff submitted Family Leave Act papers around July 2007. Maldonado was aware of plaintiff's medical conditions at that time.

Plaintiff stated, however, that he could perform his duties of mail delivery despite his mental condition and Maldonado was not aware of any physical or mental restrictions that would impede on plaintiff's ability to perform his duties. (Docket No. 24-5 at 1-2.) At the end of 2007, plaintiff's supervisor, Armando Perez ("Perez"), called plaintiff "crazy, crazy, you're crazy" when plaintiff showed Mr. Perez a Family Leave document. Id. at 34-35.

In 2006 and 2007, plaintiff's supervisor, Jose Colon ("Colon"), subjected plaintiff to extra scrutiny and supervision. Id. at 35-36. In 2007 and 2008, plaintiff's supervisor, Andrew Zeisky ("Zeisky"), searched plaintiff's private car for about 15-20 minutes. Id. at 51-53. Mr. Zeisky had a right to inspect plaintiff's vehicle because plaintiff used his private vehicle to deliver mail. Id.

On January 30, 2008, plaintiff did not arrive back at the post office branch by 5:00 p.m., the official Postal Service closing time, after delivering mail. (Docket No. 24-2 at 27.) At around 6:00 p.m., plaintiff's supervisor, Brenda Rios ("Rios"), called plaintiff's cell phone because he had not returned to the branch. Id. at 28. Plaintiff did not answer his phone because he did not recognize the phone number, so Ms. Rios left him voicemail inquiring as to plaintiff's whereabouts. Id. Plaintiff did not

call his supervisor to inform her that he would be late, but called a co-worker, and returned to the postal office at 6:30 p.m.  Id. at 28-30.  On February 6, 2008, plaintiff was issued a 14 day no-time-off suspension for improper conduct and delay of mail delivery.  (Docket No. 33-2.)  The suspension related to an incident that occurred on January 26, 2008.  Id.  Plaintiff's suspension was later reduced to a mere letter of warning, the lowest level of disciplinary action.  (Docket Nos. 24-2 at 36-37; 30-8 at 1.)  On February 16, 2008, after a day's work, around 6:00 p.m., plaintiff started to cry and felt humiliated as a result of the January 30, 2008 incident with supervisor Rios.  (Docket No. 24-2 at 38-44.)  On that date, plaintiff left the Postal Service never to return to work.  Id.  Plaintiff was never discharged from the Postal Service, nor did the Postal Service take away pay from him.  Id. at 47-48.

On April 15, 2008, plaintiff filed a formal complaint of discrimination against Moyeno, Rios, Awilda Rodriguez ("Rodriguez"), Armando Perez ("Perez"), and Maldonado.  (Docket No. 30-4.)  Plaintiff resigned from the Postal Service effective April 29, 2008, after exhausting annual and sick leave from February 16, 2008 to April 29, 2008.  Id.  After his resignation, plaintiff never went back to work and he is currently totally

disabled to work.  (Docket No. 30 at 6-7.)  The Social Security Administration found plaintiff totally disabled to work in August 2008.  Id. at 9-10.

Rios was not involved in plaintiff's initial EEO activity from January 23, 2007.  (Docket No. 24-4 at 2-3.)  Rios did not issue the 14-day no-time-off suspension notice to the plaintiff.  Id. at 4.  Plaintiff's supervisor Rodriguez issued the suspension notice, but Rios conducted the investigation that led to the notice.  Id.  Rodriguez was a customer service supervisor temporarily assigned to the Bayamon branch from July 2007 to March 2008.  (Docket No. 24-8 at 1.)  Plaintiff's supervisor Zeisky made the decision to issue the suspension based on information he received from Rios and Rodriguez.  (Docket No. 24-6 at 5.)

On May 30, 2008, plaintiff's supervisor Colon received from him a Family Medical Leave Act ("FMLA") packet, which Colon submitted to the FMLA Coordinator, Richard Gonzalez, who approved it for a once-a-month treatment for three months.  (Docket No. 24-7 at 2.)  Most of the conversations between Colon and Alvarado centered on his delays in delivering mail on his route.  Id. at 3. Supervisor Colon was not involved in plaintiff's 14 day no-time-off suspension.  Id.

## II.  **Summary Judgment Standard**

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); see also Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52.  (1st Cir. 2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  See Fed.R.Civ.P. 56(c).  The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment.  For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to

specific facts that demonstrate the existence of an authentic dispute. See Suarez v. Pueblo Int'l., Inc., 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment." Id. at 252. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore, however, "conclusory allegations,

improbable inferences, and unsupported speculation." <u>Medina-Muñoz</u>

<u>v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990).

## III. Discussion

### A.  Discrimination under the Rehabilitation Act

Alvarado alleges that he suffered discrimination by his supervisors on the basis of his disability in violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq*. The Rehabilitation Act, like its more famous sister statute, the Americans with Disabilities Act ("ADA"), prohibits discrimination against an otherwise qualified individual on the basis of his or her disability. As a general proposition, the case law construing the ADA applies equally to claims raised under the Rehabilitation Act.[1]

---

[1] Neither party mentions the fact that in September of 2008 Congress enacted the ADA Amendments Act, which by its own terms went into effect on January 1, 2009. Pub.L. No. 110-325 (2008) ("ADA AA"). The overarching purpose of the act is to reinstate the "broad scope of protection" available under the ADA and the Rehabilitation Act. <u>Id</u>. at §§ 2(b), 7; <u>see also</u> <u>Mastrolia v. Potter</u>, No. 08-5967, 2010 WL 1752531, at *3 (D.N.J. Apr. 27, 2010) (finding that "the ADA standards apply to the Rehabilitation Act . . .".) Among other things, the ADA AA rejects the United States Supreme Court's interpretation of the term disability in <u>Toyota Motor Mfg., Ky., Inc. v. Williams</u>, 534 U.S. 184, 198 (2002) and <u>Sutton v. United Air Lines</u>, 527 U.S. 471, 492 (1999). <u>Id</u>. The Court need not concern itself with the ADA AA, however, because the amendments do not apply retroactively. <u>See</u> <u>Carreras v. Sajo, Garcia & Partners</u>, 596 F.3d 25, 33 (1st Cir. 2010); <u>Fournier v. Payco Foods Corp.</u>, 611 F.Supp.2d 120, 129 n. 9 (D.P.R. 2009).

Calero-Cerezo v. United States Department of Justice, 355 F. 3d 6,

19 (1st Cir. 2004).

Plaintiff Alvarado bears the initial burden of proving

each element of his claim for disability discrimination. Mendez v.

West, 177 F.Supp.2d 121, 125 (D.P.R. 2001).  To establish a *prima*

*facie* case of disability discrimination, or more specifically, for

failure to accommodate under the Rehabilitation Act, plaintiff

Alvarado must establish the following three elements:  (1) that he

suffered from a "disability" within the meaning of the Act;

(2) that he was a qualified individual in that he was able to

perform the essential functions of his job, either with or without

a reasonable accommodation; and (3) that despite his employer's

knowledge of his disability, the employer did not offer a

reasonable accommodation for the disability. Calero-Cerezo, 355 F.

3d at 20; Lebron-Torres v. Whitehall Laboratories, 251 F.3d 236,

239 (1st Cir. 2001).

For the purposes of the ADA and the Rehabilitation Act,

a disability is either (1) a physical or mental impairment which

substantially limits one or more of an individual's major life

activities; (2) a record of such an impairment; or (3) being

regarded as having such an impairment.  42 U.S.C. § 12102(2).

Alvarado argues that he actually suffered from a mental impairment

that substantially limited more than one of his major life functions.

The determination of whether a plaintiff is disabled under the Act must be made on a case-by-case basis. <u>Toyota Motor Mfg., Ky., Inc. v. Williams</u>, 534 U.S. 184, 198 (2002). The analysis of whether plaintiff Alvarado has a disability within the meaning of the statute depends upon three factors: (1) whether he suffered a physical or mental impairment; (2) whether a life activity limited by the impairment qualifies as major; and (3) whether the impairment substantially limited a major life activity. <u>Calero-Cerezo</u>, 355 F. 3d at 20. The burden is on plaintiff Alvarado to establish these three elements. <u>Id</u>. Alvarado has successfully satisfied the first two elements, but he fails to satisfy the third.

A mental or psychological disorder, including emotional or mental illness, qualifies as a physical or mental impairment. 29 C.F.R. § 1630.2 (h)(2). It is undisputed that Alvarado suffers from a schizo-affective disorder, which qualifies as a mental impairment. <u>Calero-Cerezo</u>, 355 F.3d at 20 (recognizing that depression is a mental impairment and may constitute a disability under federal law in some circumstances); <u>see</u> <u>Toledo v. Sanchez</u>, 454 F.3d 24, 32 (1st Cir. 2006) (finding that plaintiff with

schizo-affective disorder properly alleged that he had a mental
impairment). Accordingly, Alvarado has easily shown that he has a
mental impairment.

Alvarado has also shown that his impairment affects a
"major" life activity. The First Circuit Court of Appeals has
defined a major life activity as "an activity of central importance
to people's daily lives." Calero-Cerezo, 355 F. 3d at 21 (citing
Toyota Motor, 534 U.S. at 197). The Calero-Cerezo court
specifically noted that sleeping and working, the two activities
cited by plaintiff as being affected by his impairment, are
recognized as major life activities for the purposes of the ADA.
Id.

Alvarado has been unable, however, to establish that any
of the alleged major life activities affected by his mental
impairment are "substantially" limited. The word substantially
means "considerable" or "specified to a large degree" but it should
"not be equated with utter inabilities." Calero-Cerezo, 355 F. 3d
at 21 (internal citations omitted). In addition, "if a person is
taking measures to correct for, or mitigate a physical or mental
impairment, the effects of those measures–both positive and
negative–must be taken into account when judging whether that
person is 'substantially limited' in a major life activity and thus

'disabled' under the Act." <u>Sutton v. United Airlines, Inc.</u>, 527 U.S. 471, 482 (1999) ("A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently [sic] 'substantially limits' a major life activity.").[2]

The Court briefly pauses from its analysis to determine whether the documents submitted by plaintiff in support of his claim that his major life activities were "substantially" limited by his mental impairment are admissible evidence.  Plaintiff has submitted a psychiatric report prepared by Dr. Fernando Cabrera, plaintiff's psychiatric expert, and a psychiatric evaluation report prepared by Dr. Jaime Toro, who was chosen by the Postal Service to perform a disability analysis on plaintiff while he was on medical leave from work.  (Docket Nos. 30 at 24-25, 30-12, & 33-3).  In defendant's response to plaintiff's statement of additional facts, defendant alleged that the reports submitted by plaintiff are

---

[2] The Court again notes that while the ADA AA, among other things, rejects the United States Supreme Court's interpretation of the term disability as articulated in <u>Sutton</u>, the law is not retroactive.  Because the disputed activity here occurred before the law went into effect, the law does not apply here.  *supra* note 1.  Thus, in determining whether plaintiff is "substantially limited" in a major life activity and may be considered "disabled" under the ADA and the Rehabilitation Act, the Court takes into account the measures taken to correct for or mitigate plaintiff's mental impairment.  See <u>Sutton</u>, 527 U.S. at 482.

inadmissible evidence because they are hearsay and fail to comply with the requirements of Rule 56(e), because they have not been properly authenticated.  See Docket No. 38 at 1.  The First Circuit Court of Appeals has held that "[t]o be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)."  Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000) (citations and internal quotation marks omitted).  Neither of plaintiff's psychiatric reports was submitted with an authenticating affidavit, and thus, the reports are inadmissible for purposes of summary judgment.  Castro-Medina v. Procter & Gamble Commercial Co., 565 F.Supp.2d 343, 360 n. 3 (D.P.R. 2008) (striking plaintiff's expert report prepared by a psychiatrist where it was submitted without an authenticating affidavit).

A thorough review of the rest of the record reveals that with the help of his medication and psychological treatment, Alvarado can function without "substantial" limitations on his major life activities. Alvarado claims that "[n]otwithstanding the ameliorative effects of medications, his acute symptoms of depression and insomnia had persisted" and that "his mental impairment is permanent [and] long-term."  (Docket No. 29 at 9.) The record has established, however, that although Alvarado has had

a medical history of a recurrent schizo-affective disorder since
August 1992, his psychiatric treatment and medication were so
effective at controlling the symptoms of his illness "that he was
able to perform his duties as a Rural Carrier throughout his
employment." (Docket Nos. 24 at 1; 30 at 1.)  While plaintiff may
have been consistently late in delivering mail because of his
medication, he admits that he "was able to perform the essential
duties of his position of letter carrier because his symptoms were
under control by psychiatric treatment and pharmacotherapy."
(Docket No. 29 at 9.)  Finally, plaintiff's allegations that
stressful situations at work caused him restlessness during the
night and fatigue during working hours are not supported by the
record and do not rise to the level of "substantially" limiting his

major life activities of working[3] or sleeping[4].  Accordingly, the

Court must hold that, pursuant to statute, Alvarado is not

"substantially limited" in any of the alleged major life activities

affected by his mental impairment.  Based on the Court's finding

that Alvarado is not "disabled" under the Rehabilitation Act, the

Court need not engage in a discussion of whether Alvarado was a

qualified individual or a victim of a hostile work environment.

Therefore, defendant's motion for summary judgment on plaintiff's

discrimination claim is **GRANTED.**

**B.   Retaliation**

        Alvarado alleges that the Postal Service took retaliatory

actions against him because he engaged in the protected activity of

attempting to enforce his rights under Title VII.  In order to

---

        [3] See Bartlett v. New York State Bd. of Law Examiners, 226 F.3d 69,
84-85 (2nd Cir. 2000) (holding that plaintiff alleging disability must
prove that it is the impairment, "and not some other factor or factors,
that causes the substantial limitation"); Nyrop v. Independent School
Dist. No. 11, 616 F.3d 728, 735 (8th Cir. 2010) (finding no disability
despite appellant's complaint of fatigue where conditions did not impair
appellant's ability to care for herself); Weiler v. Household Finance
Corp., 101 F.3d 519, 524 (7th Cir. 1996) ("The major life activity of
working is not 'substantially limited' if a plaintiff merely cannot work
under a certain supervisor because of anxiety and stress related" to her
job).

        [4] See Colwell v. Suffolk County Police Dept., 158 F.3d 635, 644 (2nd
Cir. 1998) (plaintiff's allegation that "he takes a medication as a sleep
aid and . . . usually get[s] a tough night's sleep" was not sufficient
"to establish that the degree of limitation he suffers is substantial.")
(internal quotation marks omitted).

establish a *prima facie* case of retaliation under the ADA,
plaintiff Alvarado must show:  (1) that he engaged in protected
conduct; (2) that he suffered an adverse employment action; and
(3) that there was a causal connection between the protected
conduct and the adverse employment action.  <u>Carreras</u>, 596 F.3d
at 35 (internal citations omitted.)

Alvarado's specific allegations regarding his retaliation
claim are convoluted; he appears to have misstated relevant dates
in his statement of facts and opposition to defendant's motion for
summary judgment.  Upon an independent review of the record, the
Court finds the relevant information to be as follows.  On
January 23, 2007, Alvarado requested a counseling appointment with
a dispute resolution specialist with the EEO office because of
comments that Moyeno had made to him in November and December of
2006.  (Docket No. 30-2.)  Alvarado alleges, and defendant
disputes, that he informed Maldonado and Moyeno of his
discrimination complaint on April 19, 2007.  (Docket No. 30-1
at 2.)  On April 15, 2008, plaintiff filed a formal complaint of
discrimination for disability and retaliation against Moyeno, Rios,
Rodriguez, Perez, and Maldonado for alleged acts which occurred
between April 19, 2007 and January 2008.  (Docket No. 30-4.)

The Supreme Court has held that for a plaintiff to prove that he or she suffered an adverse employment action, he or she "must show that a reasonable employee would have found the challenged action materially adverse", which is to say that "it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). The adverse employment action plaintiff claims to have suffered is his constructive discharge caused by an alleged intensification of his hostile working environment after he filed his initial complaint in January 2007. (Docket No. 29 at 18-24.) Importantly, the Supreme Court has noted that a court need only consider "the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint." Id. at 69.

The Court considers the allegations made by plaintiff after he made his initial complaint in January 2007 until the time he resigned in April 2008. Plaintiff alleges that during that period of time he was subjected to jokes and ridicule by his supervisors and colleagues. He further alleges that he was subjected to extra scrutiny and supervision. Plaintiff claims that on at least one occasion, his supervisor searched his private car

for 15-20 minutes, but admits that the supervisor had a right to do
so, because plaintiff used his private car to deliver mail.  On
January 30, 2008, plaintiff alleges that he received an angry
voicemail from his supervisor because he was an hour and a half
late returning to the post office after closing time.  Plaintiff
admits he did not answer his phone when his supervisor called
because he did not recognize the number, and that he did not notify
a supervisor that he would be late.  On February 6, 2008, plaintiff
was issued a 14 day no-time-off suspension for improper conduct and
delay of mail delivery, which was later reduced to a mere letter of
warning, the lowest level of a disciplinary action.  On
February 16, 2008, at around 6:00 p.m., plaintiff suffered a
nervous breakdown allegedly as a result of the January 30 incident
and left work, never to return again.  He formally resigned on
April 29, 2008, after exhausting his annual and sick leave.

        The Court finds that the alleged harassment suffered by
plaintiff does not give rise to an actionable "hostile work
environment" claim.  While proof of intensified harassment after
filing a complaint may support a claim of retaliation, it is well-
settled that "[a]n employee's decision to report discriminatory
behavior cannot immunize that employee from those petty slights or
minor annoyances that often take place at work and that all

employees experience." <u>Burlington Northern</u>, 548 U.S. at 68.  The

jokes and ridicule experienced by plaintiff may have been

insensitive and hurtful, but they do not objectively rise to the

level of a "hostile work environment."   <u>Cf.</u> <u>Quiles-Quiles v.</u>

<u>Henderson</u>, 439 F.3d 1, 8-9 (1st Cir. 2006) (upholding jury's

finding that a "hostile environment was motivated by a desire to

retaliate" where the harassment included "threats . . . screaming

tirades . . . and efforts . . . to interrupt [plaintiff's] pursuit

of a union grievance."); <u>Noviello v. City of Boston</u>, 398 F.3d 76,

93-94 (1st Cir. 2005) (finding retaliatory harassment where

plaintiff was falsely accused of misconduct, subjected to "work

sabotage" and harassing insults, and endured "continued tormenting"

and physical threats.)  An employee's perceptions and subjective

beliefs of discrimination "cannot govern a claim of constructive

discharge, if, and to the extent that, the perceptions are

unreasonable." <u>Vega v. Kodak Caribbean, Ltd.</u>, 3 F.3d 476, 481 (1st

Cir. 1993).   Moreover, the actions taken by plaintiff's

supervisors, both in terms of the extra scrutiny plaintiff

experienced and the reaction of his supervisor to his extreme

tardiness and improper conduct, were entirely appropriate given the

circumstances and had a legitimate, non-discriminatory purpose. For

the reasons stated, plaintiff's allegations do not rise to the

level of intolerableness that would have compelled a "reasonable worker" to resign.  See Burlington Northern, 548 U.S. at 68. Therefore, defendant's motion for summary judgment on plaintiff's retaliation claim and hostile environment claim is GRANTED.

### C.   Conclusion

For the reasons stated above, defendant's motion for summary judgment is **GRANTED**.   This case is **DISMISSED with prejudice**.  Judgment shall be entered accordingly.

The Jury Trial scheduled to commence on May 9, 2011 is vacated and set aside.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, May 3, 2011.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
United States District Judge